IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARY EVANS,                                )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )          1:20CV443
                                           )
KILOLO KIJAKAZI,                           )
Acting Commissioner of Social Security,[1] )
                                           )
                    Defendant.             )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Mary Evans ("Plaintiff") brought this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a

final decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 12, 2016, alleging a

disability onset date of July 16, 2016. (Tr. at 22, 170-73.)[2] Her claim was denied initially (Tr.

at 66-75, 91-94), and that determination was upheld on reconsideration (Tr. at 76-86, 96-99).

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul
as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this
suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #11].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 100-02.) Plaintiff attended the subsequent video hearing on September 17, 2018, along with her attorney and an impartial vocational expert. (Tr. at 22.) Following the hearing, ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and, on March 17, 2020, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

Case 1:20-cv-00443-NCT-JEP   Document 23   Filed 03/03/22   Page 3 of 20

"The Commissioner uses a five-step process to evaluate disability claims." <u>Hancock</u>, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." <u>Id.</u>

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

Case 1:20-cv-00443-NCT-JEP   Document 23   Filed 03/03/22   Page 4 of 20

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments."  Hines, 453 F.3d at 563.  In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date of July 16, 2016.  Plaintiff therefore met her burden at step one of the sequential evaluation process.  (Tr. at 24.)  At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments through her date last insured:

> obesity, lumbar degenerative disc disease with stenosis and Type 2 diabetes mellitus with neuropathy[.]

(Tr. at 24.)  The ALJ next found at step three that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing.  (Tr. at 26.)  Therefore, the ALJ assessed Plaintiff's RFC and determined that, through her date last insured, Plaintiff had the RFC to perform light work with the following, non-exertional limitations:

5

[Plaintiff] can occasionally kneel, crouch, stoop and crawl, can occasionally climb stairs and ramps, can occasionally climb ladders, ropes and scaffolds, and can occasionally be exposed to vibrations. [Plaintiff] can have occasional exposure to dust, noxious odors and fumes, and poor ventilation.

(Tr. at 26.) At step four of the sequential analysis, the ALJ found, based on the testimony of the vocational expert, that Plaintiff's RFC did not preclude her from performing her past relevant work as a dialysis technician as generally performed. (Tr. at 30.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now raises five challenges to the ALJ's decision. Specifically, she contends that the ALJ failed to (1) perform a function-by-function analysis of Plaintiff's abilities to walk and stand, (2) "perform a medical necessity analysis of Plaintiff's cane usage," (3) properly evaluate the medical opinion evidence, (4) properly evaluate Plaintiff's back impairment under 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04A (hereinafter "Listing 1.04A"), and (5) "discuss the statement of Plaintiff's employer regarding her ability to perform her past relevant work . . . as a dialysis technician." (Pl.'s Br. [Doc. #15] at 1.) After careful review of the record, the Court finds that Plaintiff's contentions regarding both the medical opinion evidence and Listing 1.04A require further consideration upon remand.

A. Medical Opinion Evidence

In terms of opinion evidence, Plaintiff first argues that the ALJ erred by failing to mention Dr. Candace Smith's October 2016 opinion and by assigning little weight to the 2018 opinions of her treating physicians Dr. Ankit Patel and Dr. Enobong Amao. For claims like Plaintiff's that are filed before March 24, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect

6

judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to him, generally "more weight is given 'to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Brown, 873 F.3d at 255 (quoting 20 C.F.R. § 404.1527(c)(1)). In addition, under what is commonly referred to as the "treating physician rule," the ALJ generally accords the greatest weight—controlling weight—to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). If a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with other substantial evidence in [the] case record," it is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4; Brown, 873 F.3d at 256; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.[5] Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-

---

[5] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). This requires the ALJ to provide "sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020) ("[T]he opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence." (quotation omitted); Dowling v. Comm'r of Soc. Sec., 986 F.3d 377, 377 (4th Cir. 2021) ("While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion.").

Here, Plaintiff argues that the ALJ failed to meaningfully consider the relevant factors in weighing the opinions of Plaintiff's treating physicians, Drs. Amao and Patel, and instead

8

"dredg[ed] up specious inconsistencies in the record" to support his assignment of little weight to those physicians' findings. (Pl.'s Br. at 16-17.) In a letter dated August 30, 2018, Dr. Patel opined that Plaintiff's "lumbosacral back pain radiating [to her] bilateral lower extremities" resulted in limitations in ambulation, bending, rotating, and lifting. (Tr. at 586.) Dr. Patel further noted that neurosurgery had recommended surgical intervention. (Tr. at 586.) However, the ALJ ultimately assigned Dr. Patel's opinions little weight based on the following two factors:

1. Dr. Patel's "medical notations for different examination dates appear to be cut and paste findings of previous visits by [Plaintiff]." (Tr. at 29 (citing Tr. at 543-83).)

2. "Dr. Patel's physical examinations of [Plaintiff] showed she has 5/5 strength for knee extension and ankle dorsi/plantar flexion bilaterally, and 4/5 strength for hip extension on April 28, 2018 and August 25, 2018." (Tr. at 29 (citing Tr. at 575, 582).)

Regarding the ALJ's first contention, a closer examination of Dr. Patel's treatment notes reveals that, although the portion of the records chronicling Plaintiff's medical history repeats, for obvious reasons, Plaintiff's objective examination findings are clearly appointment-specific. In fact, each appointment note includes a narrative update since the last clinic visit (Tr. at 571, 558, 551, 544), and each appointment note reflects the PHQ-9 depression screening conducted for that visit and the physical examination results for that visit (Tr. at 581-82, 574-75, 561-62, 554-55, 547-48), and the notes are annotated with dates and initials showing the entry or confirmation of each note by the provider for that office visit (Tr. at 577,

9

570, 557, 550). The ALJ acknowledges as much in his second rationale for assigning Dr. Patel's opinion little weight, where he notes different strength findings at some appointments. Notably, along with the normal and slightly weakened strength findings in Plaintiff's lower extremities recounted by the ALJ, Dr. Patel's physical examination results also reveals additional findings of motor loss in Plaintiff's lower extremities (Tr. at 549, 555-56, 562-63), a limited and/or painful range of motion of her spine (Tr. at 556, 562, 575, 582), sensory or reflex loss in her lower extremities (Tr. at 549, 555, 562, 575, 582), and several positive straight leg raise tests (Tr. at 575, 582). The ALJ acknowledges none of these abnormal findings, nor, in focusing solely on range of motion in Plaintiff's lower extremities, does he acknowledge that Plaintiff's limitations arise primarily from back pain.

Significantly, the ALJ assigned "some weight" to the opinions of the State agency medical consultants that Plaintiff could perform light work, which encompasses the RFC findings that Plaintiff could lift up to 20 pounds and stand and walk for up to six hours in an eight-hour workday. In adopting these opinions, the ALJ explained that Plaintiff's ability to perform light work was "supported by the medical findings of Dr. Melanie Belfi[,] who evaluated [Plaintiff] and diagnosed her with severe lumbar radiculopathy but also noted that there are '[n]o red flags for spinal cord compression[,]'" and that Plaintiff's back "'does not show pathology that would require ongoing emergent intervention or inpatient treatment.'" (Tr. at 29, 30 (citing Tr. at 375)). As Plaintiff correctly notes, the ALJ appears to have misinterpreted Dr. Belfi's findings at a fundamental level. Plaintiff never claims that her back problems stem from spinal cord compression, but rather from nerve root compression, which finds support in the record, as further discussed in subsection B below. Moreover, Dr. Belfi's

10

statement that Plaintiff did not "require ongoing emergent intervention" in July 2016 clearly stems from Dr. Belfi's position as an emergency room physician. She does not suggest that Plaintiff requires no further treatment, merely that Plaintiff's back position did not merit hospital admission or further emergency room treatment at that time. Moreover, more than two years elapsed between the State agency physicians' opinions and the ALJ's decision in this case. Although the ALJ notes that "[n]o additional diagnostic testing is in the record that would show [Plaintiff's] lumbar degenerative disc disease . . . increased in severity" during that time, the objective examination results and related opinion evidence from Drs. Patel and Amao clearly reflect significant limitations which the ALJ failed to fully and fairly consider.

In an opinion letter issued on August 24, 2018, Dr. Amao opined that Plaintiff's lumbar stenosis with radiculopathy caused chronic, severe low back pain which prevented her from lifting more than ten pounds and limited her ability to bend, stoop, and walk. (Tr. at 584.) Dr. Amao, like Dr. Patel, further noted that spinal "surgery has been recommended due to failure of conservative treatment." (Tr. at 584.) The ALJ found that these limitations were "not supported by clinical and diagnostic findings." (Tr. at 29.) In doing so, he explained that Dr. Amao's findings were "unconvincing" because his treatment notes recounted a normal range of motion and, on two occasions, reflected no back pain. (Tr. at 29.) The ALJ further noted that, although Plaintiff's August 2016 lumbar MRI "showed severe right facet arthrosis, it only produced mild right foraminal stenosis," and no further testing indicated a later increase in severity. (Tr. at 29 (citing Tr. at 386-88, 590).) However, as Plaintiff correctly notes, "the ALJ ignores that [Plaintiff's] imaging showed not only mild spinal stenosis on the right at L5-S1 (which can still produce severe pain), but also that she had nerve compression at the L4-5

level evidenced by underfilling of both descending L5 nerves." (Pl.'s Br. at 17 (citing Tr. at 388).) Plaintiff, citing Arakas, also correctly argues that the fact that Plaintiff occasionally displayed normal findings "does not detract from her functionally limiting pain and weakness due to lumbar radiculopathy or from Dr. Amao's opinion regarding such." (Pl.'s Br. at 17.) Overall, the ALJ failed to properly consider the consistency and supportability of Dr. Amao's findings, let alone consider these factors in the context of Dr. Amao's position as Plaintiff's treating provider throughout 2018.

As a final matter, Plaintiff argues that the ALJ failed to mention, let alone evaluate, Dr. Smith's October 2016 opinion that Plaintiff could not longer perform her prior job and would likely need to retrain for desk work. (Tr. at 398-99.) Although Plaintiff acknowledges the conclusory nature of this opinion, an ALJ "must still 'evaluate all the evidence to determine the extent to which the treating physician's legal conclusion is supported by the record.'" (Pl.'s Br. at 16 (quoting Morgan v. Barnhart, 142 Fed. App'x 716, 722 (4th Cir. 2005)); SSR 96-5p, 1996 WL 374183, at *3 (Jul. 2, 1996) ("Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, included opinions about any issue, including opinions about issues that are reserved to the Commissioner."). Here, Plaintiff's counsel at the hearing specifically argued that Plaintiff's

> primary care physician at Eagle Physicians back in 2016 noted that she would not be able to return to her job as a dialysis tech, but would instead at most be capable of a sit-down job. That was . . . . included in a 10/5/16 medical note.

(Tr. at 42.) Thus, Plaintiff highlighted and relied upon that opinion, but the ALJ failed to consider or address it at all. Plaintiff further contends that the ALJ's failure to consider Dr. Smith's opinion was "particularly harmful" given that, if Plaintiff was unable to perform her

12

past relevant work, the Medical Vocational Guidelines would direct a finding of disability.[6] Accordingly, this issue, along with the ALJ's treatment of Drs. Patel and Amao's opinions, merits further consideration on remand.

B. Listing 1.04A

The ALJ's listing analysis provides an additional basis for remand. Although an ALJ is not required to explicitly identify and discuss every possible listing, he is compelled to provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir.2011)). However, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id.

---

[6] On this issue, the Court notes that at several points in the Response brief, Defendant contends that the errors raised by Plaintiff are harmless because the Vocational Expert identified other jobs that Plaintiff could do with a reduced standing requirement. (Tr. at 60-61.) However, Plaintiff contends that the Medical Vocational Guidelines would direct a finding of disabled if Plaintiff could not return to her past work, at least after she turned 55, and Defendant has not addressed that potential issue.

13

If the decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295.

Here, the ALJ's discussion of Listing 1.04, in its entirety, reads as follows:

> Listing 1.04 (Disorders of the spine) is not met because [Plaintiff's] lumbar degenerative disc disease did not result in compromise of a nerve root or the spinal cord.

(Tr. at 26.) Accordingly, it appears that the ALJ acknowledged that there was sufficient evidence in the record to trigger the potential applicability of Listing 1.04. The remaining question under Radford is whether the ALJ's explanation and analysis is sufficient to allow judicial review of his step three determination as to that Listing.

A plaintiff meets Listing 1.04A only if she meets three requirements. She must first show that she suffers from a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. Second, she must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord," and third, she must show that she meets the additional requirements of paragraph A of the Listing:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Id.[7]

---

[7] The Court notes that the Listings have been amended effective April 2, 2021. Specifically, the SSA recodified Listing 1.04A as Listing 1.15. In doing so, the agency clarified its requirements for meeting a spinal disorder listing, in part by setting out additional criteria claimants must demonstrate to show disability at step three of the sequential analysis. See 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020); compare 20 C.F.R. Pt.

Case 1:20-cv-00443-NCT-JEP   Document 23   Filed 03/03/22   Page 14 of 20

In the present case, Plaintiff's documented degenerative disc disease clearly met the first of these requirements. As for the second requirement, a lumbar CT myelogram performed on August 16, 2016, revealed as follows:

1. L3-L4 circumferential disc bulging eccentric to the LEFT, small LEFT foraminal disc extrusion producing mild LEFT foraminal stenosis.

2. L4-L5 mild central stenosis. Bilateral subarticular and lateral recess stenosis associated with a broad-based disc extrusion with mild caudal migration of disc material. Mild symmetric bilateral foraminal stenosis potentially affecting both L4 nerves.

3. L5-S1 disc degeneration with severe RIGHT facet arthrosis producing mild RIGHT foraminal stenosis.

(Tr. at 594.) Despite the ALJ's assertion that there is no evidence of nerve root compression in this case, the radiologist's findings clearly indicate that the narrowing, or stenosis, of the spaces in Plaintiff's spine at the L4-L5 level "potentially affect[ed] both L4 nerves." (Tr. at 594.) Plaintiff further notes that her CT myelogram also revealed "underfilling of the L5 nerves due to a disc extrusion at the L4-5 level of the spine pressing upon them." (Pl.'s Br. at 18 (citing Tr. at 388).) She contends that "filling defects indicate compression of a nerve root at that level on myelogram as the pressure on the nerves prevents them from filling properly." (Pl.'s Br. at 18.) In addition, Plaintiff's neurosurgeon noted that Plaintiff "is going to need a decompressive laminotomy at the level of 4-6 to decompress the L4-L5 space including the 5-

---

404, Subpt. P, App'x 1 § 1.04(A), with 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.15 (effective April 2, 2021). The new listing applies to both new applications filed on or after April 2, 2021, as well as to claims that are pending with the SSA on or after that date. However, the Court must consider the present case based on the version of the regulations in effect at the time of the ALJ's decision, and any consideration of whether the new Listings could or should apply on remand would be for the ALJ to consider in the first instance. 85 Fed. Reg. 78164-01, n.2 ("[W]e will use these final rules on and after their effective date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

1." (Tr. at 430.) Nevertheless, the ALJ included no analysis of Listing 1.04's second requirement beyond his blanket assertion that there was no evidence of nerve root compression. (Tr. at 26.) He then failed to analyze whether Plaintiff's back impairment met any of the additional requirements set out in paragraph A.[8]

Defendant now contends that the ALJ's reliance on the findings of the State agency medical consultants somehow relieved him of his responsibility to provide adequate analysis at step three of the sequential analysis or, at the very least, rendered his error harmless. In particular, Defendant relies on the consultants' opinions that Plaintiff's back impairment failed to meet a listing. (Def.'s Br. [Doc. #21] at 21 (citing Tr. at 69-70, 80-81).) However, the Fourth Circuit specifically rejected this rationale in Brown v. Colvin, 639 F. App'x 921 (4th Cir. Feb. 9, 2016). In that case, the district court noted the ALJ's failure to specifically analyze Listing 4.04, but nevertheless considered the evidence in the record and the ALJ's decision and concluded that the ALJ's "detailed review of Plaintiff's medical history constitutes substantial evidence supporting Plaintiff's failure to satisfy" the elements of the Listing. Brown v. Colvin, 2014 WL 4666978 (W.D.N.C. Sept. 18, 2014.) However, the Fourth Circuit reversed the district court and held that:

> In explaining his decision at Step Three . . . the ALJ stated only that:
>
>> The medical evidence of record does not establish the presence of objective findings that would meet or equal any impairment listed in the Listing of Impairments as found in Appendix 1, Subpart P of Regulations No. 4. This is consistent [with] the State Agency opinion considering Listing[ ] 4.04 (Ischemic Heart Disease).

---

[8] Plaintiff does not contend that her back impairment could potentially meet Listings 1.04B or C.

Case 1:20-cv-00443-NCT-JEP   Document 23   Filed 03/03/22   Page 16 of 20

We found a substantially similar explanation deficient in *Radford* because it was "devoid of reasoning" and rendered impossible the task of determining whether the ALJ's finding was supported by substantial evidence. 734 F.3d at 295.

The Commissioner contends that, despite the similarity in the cursory explanations provided by the ALJ here and the ALJ in *Radford*, we should not remand for further proceedings because, unlike the medical record in *Radford*, the medical record here clearly establishes that Brown's heart condition does not meet or equal the criteria of Listing 4.04C. We conclude that Brown's medical record is not so one-sided that one could clearly decide, without analysis, that Listing 4.04C is not implicated. Further, we do not accept Brown's and the Commissioner's invitations to review the medical record *de novo* to discover facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so. Instead, we remand to avoid engaging in fact-finding "in the first instance" and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review in the event the case returns to us. *Radford*, 734 F.3d at 296.

Brown v. Colvin, 639 F. App'x at 923. While Brown is unpublished, it is nevertheless persuasive, and provides caution to this Court with respect to any attempt to review the medical record to find facts in the first instance. It is the role of the ALJ, with assistance from medical experts as needed and appropriate, to review the medical record and discover those facts. Here, there is no way for this Court to determine what evidence the ALJ did and did not consider in concluding that Listing 1.04 was not met. ALJ did not cite the opinions of the State agency consultants or any other specific findings in making his step three determination.[9]

Both Brown and Radford instruct that where, as here, there is conflicting evidence in the

---

[9] The Court further notes that the State Agency consultants did not themselves include any specific analysis or explanation as to the Listing. To the extent that Defendant attempts to cite other evidence in the record to support the conclusion that Listing 1.04A does not apply, this Court will not undertake an analysis that is not reflected in the ALJ's decision. See generally SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) ( "[T]he duty of explanation will be satisfied when the ALJ presents '[the court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))).

record as to whether the claimant satisfies a Listing, but insufficient analysis or explanation of the issue by the ALJ, remand is required. See Radford, 734 F.3d at 296.

In the present case, as in Radford, "a fair amount of evidence" in the record supports Plaintiff's claim, and the ALJ's failure to provide a sufficient explanation for his step three determination precludes the Court from undertaking meaningful review of that finding. Notably, in addition to the evidence of potential nerve root compression noted in the imaging, Plaintiff also contends that her treatment records reflect the presence of all of the criteria set out in paragraph A of Listing 1.04 during the relevant time period. Specifically, she notes that

> neuroanatomical distribution of pain from her back into her [lower extremities] is well documented. . . . Additionally, her [physical examinations] have revealed limited and painful [range of motion] of her spine (see, e.g., [Tr. at] 400; 435; 556; 562; 575; 582), motor loss in her [lower extremities] (see, e.g., [Tr. at] 313; 381; 429; 432; 435; 549; 555-56; 562-63; 575; 582) and sensory or reflex loss in her [lower extremities] (see, e.g., [Tr. at] 381; 549; 555; 562; 575; 582) as well as several positive [straight leg raise] tests (see, e.g., [Tr. at] 374; 429; 575; 582).

(Pl.'s Br. at 18-19.) Defendant does not contest that Plaintiff's back impairment meets the paragraph A criteria. Instead, he argues that such a finding is irrelevant in light of Plaintiff's failure to meet the Listing's second requirement, nerve root compression. (Def.'s Br. at 22.) However, because the evidence raised by Plaintiff was not addressed by the ALJ, the Court concludes, as in Brown, that the medical evidence related to Plaintiff's back condition "is not so one-sided that one could clearly decide, without analysis" that the Listing is not met. Therefore, as in Radford and Brown, the appropriate course is to remand the case to the ALJ for further proceedings. In light of the multiple bases for remand set forth in this

Recommendation, at this time the Court need not address the additional contentions raised by Plaintiff.[10]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent,

_____

[10] The Court does note, however, that multiple other issues would also appear to warrant remand in this case. For example, as noted by Plaintiff, her treating physician Dr. Patel directed her to use a cane for safety. That direction is reflected in each of Dr. Patel's treatment notes, and is supported by examinations reflecting an antalgic gait, lower extremity weakness and decreased sensation, back pain, and balance issues. (Tr. at 582-83, 575-76, 562-64, 555-57, 549-50.) The Vocational Expert testified that use of a cane would be an accommodation and would preclude return to Plaintiff's prior work. (Tr. at 63.) However, the ALJ did not evaluate Plaintiff's need for an assistive device in accordance with SSR 96-9p. Instead, the ALJ found as follows:

> [Plaintiff] testified that she uses her cane whenever she visits her providers, but only Dr. Patel has records of her using a cane. Dr. Amao examined [Plaintiff] and found her musculoskeletal system is within normal range of motion with only mild tenderness to her lumbar spine.

(Tr. at 29 (internal citations omitted).) However, Dr. Amao's notes consistently reflect Plaintiff's degenerative disc disease that was managed by Dr. Patel, and Dr. Amao's notes do not reflect that Plaintiff was not using a cane; they just do not include any observation on the issue. Moreover, the record reflects that Dr. Smith sent Plaintiff for a functional evaluation by a physical therapist, and that evaluation reflects that Plaintiff used a cane in the community. (Tr. at 435.) Thus, it is not correct that "only Dr. Patel has records of her using a cane," and the fact that other providers were silent on whether Plaintiff was or was not using a cane would not eliminate the need for the ALJ to evaluate Plaintiff's need for a cane in accordance with the applicable guidance.

The Court also notes that the RFC limits Plaintiff to only occasionally stooping and only occasionally crouching. (Tr. at 26.) Stooping is "bending the body downward and forward by bending the spine at the waist" and crouching is "bending the body downward and forward by bending both the legs and spine." SSR 85-15. In this case, the Vocational Expert testified that a hypothetical individual limited to occasional stooping and crouching could perform Plaintiff's prior work of dialysis technician as generally performed, but then further testified that "bending would be a big part of that job" and that the position would require at least frequent bending. (Tr. at 59, 63.) Thus, it is not clear that the vocational expert's testimony would provide substantial evidence to support the determination in this case.

In addition, the ALJ found that Plaintiff "was not completely truthful at the hearing, alleging she was seeing a therapist then recanting that testimony." (Tr. at 29.) However, the transcript reflects that from the beginning, Plaintiff testified that she had a future appointment to see a therapist. (Tr. at 55.) She also testified that she had seen a therapist before at her provider's office, which is reflected in the records. (Tr. at 55.) Specifically, on at least two occasions, Dr. Amao called in a Licensed Clinical Social Worker to meet with Plaintiff during the appointment for "therapy and social support." (Tr. at 513, 487.) Thus, the record supports Plaintiff's testimony, and there is no indication that she was being untruthful.

The Court need not further consider these issues or other issues raised by Plaintiff, but notes the issues so that the case can be fully considered and addressed on remand.

19

Defendant's Motion for Judgment on the Pleadings [Doc. #20] should be DENIED, and Plaintiff's Motion for Judgment Reversing Commissioner [Doc. #14] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 3rd day of March, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge